## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Nicholas Spaeth,** | |
| *Plaintiff*, | |
| v. | **Civil Action No. 11-1376 (ESH)** |
| **Michigan State University College of Law,** *et al.*, | |
| *Defendants*. | |

## MEMORANDUM OPINION

Plaintiff Nicholas Spaeth sued six law schools and various officers at those schools alleging that they violated the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"), by not offering him a tenure-track teaching position after he applied to them in advance of the 2010 American Association of Law Schools ("AALS") Faculty Recruitment Conference in Washington, D.C.  (*See* Amended Complaint, Nov. 7, 2011 [Dkt. No. 10] ("Am. Compl.").)  Before the Court are motions to dismiss, or in the alternative to sever and transfer, brought by defendants Michigan State University College of Law ("Michigan State");[1] the University of Missouri School of law and its Chancellor, Brady J. Deaton (collectively, "Missouri"); Hastings College of the Law and its Chancellor and Dean, Frank H. Wu (collectively, "UC Hastings"); and the University of Iowa College of Law and its President, Sally

---

[1] Joan W. Howarth, Dean of Michigan State University College of Law, was also named as a defendant in Spaeth's Amended Complaint, but she has been dismissed by consent of the parties. (*See* Minute Order Granting Consent Motion to Dismiss Defendant Joan W. Howarth, Feb. 9, 2012.)

Mason (collectively, "Iowa").[2]  Upon consideration of these motions and Spaeth's oppositions thereto,[3] the Court will grant defendants' motions insofar as they seek severance and transfer, and deny them without prejudice insofar as they seek dismissal of plaintiff's claims.

## BACKGROUND

Spaeth, a citizen and resident of Missouri who was born in 1950 (Am. Compl. ¶¶ 1, 6), applied for teaching positions "with each of the" defendant law schools "and every other AALS member school through the Faculty Appointments Register [("FAR")] during the 2010 hiring

---

[2] *See* Defendant Michigan State University College of Law's Renewed Motion to Dismiss, or, in the Alternative, to Sever and Transfer Venue, Nov. 21, 2011 [Dkt. No. 11] ("Michigan State Mot."); Defendants', the Board of Regents, State of Iowa, University of Iowa College of Law, and Sally Mason, President, University of Iowa Motion to Dismiss or to Sever and Transfer Venue, Dec. 22, 2011 [Dkt. No. 24] ("Iowa Mot."); Motion to Dismiss or, in the Alternative, to Sever and Transfer Venue of Defendants Curators of the University of Missouri and Brady J. Deaton, Dec. 22, 2011 [Dkt. No. 26]; Memorandum of Points and Authorities of Defendants University of Missouri and Brady J. Deaton in Support of Motion to Dismiss or, in the Alternative, to Sever and Transfer Venue, Dec. 22, 2011 [Dkt. No. 27] ("Missouri Mot."); UC Hastings Defendants' Motion to Dismiss or to Sever, Jan. 24, 2012 [Dkt. No. 50] ("UC Hastings Mot.").

The University of Maryland School of Law and the President of the University of Maryland, Baltimore (collectively, "Maryland"), and Georgetown University have also moved to dismiss.  (*See* Motion to Dismiss of University System of Maryland, University of Maryland School of Law, and University of Maryland, Baltimore President Jay A. Perman, M.D., Feb. 8, 2012 [Dkt. No. 53]; Georgetown University's Motion to Dismiss, Dec. 16, 2011 [Dkt. No. 20].) This Memorandum Opinion does not address these motions, and the Court does not refer to Maryland and Georgetown when it references "defendants."

[3] *See* Plaintiff's Opposition to Defendant Michigan State University College of Law's Renewed Motion to Dismiss, or, in the Alternative, to Sever and Transfer Venue, Dec. 19, 2011 [Dkt. No. 22] ("Pl.'s Michigan State Opp'n"); Plaintiff's Opposition to Defendants' the Board of Regents, State of Iowa and Sally Mason, President, University of Iowa, Motion to Dismiss or to Sever and Transfer Venue, Jan. 17, 2012 [Dkt. No. 39] ("Pl.'s Iowa Opp'n"); Plaintiff's Opposition to Motion to Dismiss or, in the Alternative, to Sever and Transfer Venue of Defendants Curators of the University of Missouri and Brady J. Deaton, Jan. 17, 2012 [Dkt. No 40] ("Pl.'s Missouri Opp'n"); Plaintiff's Opposition to UC Hastings Defendants' Motion to Dismiss or to Sever, Feb. 9, 2012 [Dkt. No. 55] ("Pl.'s UC Hastings Opp'n").

cycle." (*Id.* ¶ 28.[4]) AALS's FAR process requires applicants to submit "a short profile of [their] education, background, and teaching interests," which is compiled on the "mandatory" FAR Form, and, if they wish, a full resume. (*Id.* ¶ 21.) Applicants' FAR Forms and optional resumes are then "distributed to all AALS members who are recruiting" prior to the Recruitment Conference. (*Id.* ¶ 22.) Separately, law schools participating in the Conference "list, in the AALS[] Placement Bulletin, [] descriptions of open positions and the type[s] of candidate[s] sought." (*Id.* ¶ 23.) Upon receipt of applicants' FAR Forms and optional resumes, law schools select and notify applicants they wish to interview at the Conference. (*See id.* ¶ 29; Iowa Mot. at 4–5.)

Spaeth was selected for two interviews at the 2010 AALS Recruitment Conference: "one at the University of Missouri, where he was already teaching as a visiting professor, and one at the University of Nebraska." (Am. Compl. ¶ 29.) He ultimately "received no job offers during the 2010 hiring cycle." (*Id.*) Spaeth alleges that each defendant law school made offers to other candidates who were younger than he, and that those candidates were less qualified than he. (*Id.* ¶ 1; *see id.* ¶¶ 36–63 (describing Spaeth's qualifications); *id.* ¶¶ 64–91 (comparing Spaeth's qualifications to those of the younger candidates hired by Michigan State); *id.* ¶¶ 95–130 (comparing Spaeth's qualifications to those of the younger candidates hired by Missouri); *id.* ¶¶ 132–61 (comparing Spaeth's qualifications to those of the younger candidates hired by UC Hastings); *id.* ¶¶ 195–223 (comparing Spaeth's qualifications to those of the younger candidates hired by Iowa).)

Having filed Charges of Discrimination against each defendant law school with the Equal

---

[4] Spaeth alleges, on information and belief, that "approximately 180 law schools interviewed approximately 800 applicants for approximately 300 positions" at the 2010 AALS Recruitment Conference. (Am. Compl. ¶ 27.)

Employment Opportunity Commission, and having received Notices of Right to Sue (*id.* ¶¶ 4–5),

Spaeth has now brought suit, alleging that each defendant law school violated the ADEA by not

hiring him.  He seeks an injunction "ordering each [defendant law school] to offer [him] a

tenure-track teaching position," along with declaratory, compensatory, and exemplary relief, and

fees, costs, and pre- and post-judgment interest.  (*Id.* at 51–52.)

      Defendants have moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6),

arguing that Spaeth has not pled a *prima facie* case under the ADEA.[5]  In the alternative,

defendants seek to sever Spaeth's suit, arguing that they have been misjoined and that the claims

against each should be severed and transferred to each defendant law school's home forum.  *See*

Fed. R. Civ. P. 21 ("Misjoinder and Nonjoinder of Parties"); 28 U.S.C. § 1404 ("Change of

venue").[6]

## ANALYSIS

      This Court will first consider severance and transfer, and since the Court concludes that

they are appropriate for the reasons stated below, it need not address defendants' arguments for

dismissal.  *See Pub. Citizen v. U.S. Dist. Court for the Dist. of Columbia*, 486 F.3d 1342, 1348

(D.C. Cir. 2007) ("certain non-merits, nonjurisdictional issues may be addressed preliminarily"

---

[5] UC Hastings, Iowa, and Missouri also moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that they are immune from suit under the Eleventh Amendment. (*See* UC Hastings Mot. at 5–8; Iowa Mot. at 5–7; Missouri Mot. at 4–5.)

[6] UC Hastings sought to dismiss or sever plaintiff's claims and did not request transfer.  In addition to addressing the arguments for severance and transfer raised by the other defendants, this Court *sua sponte* considers whether transfer of Spaeth's claims against UC Hastings is appropriate.  *See* 28 U.S.C. § 1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ."); *Miller v. Toyota Motor Corp.*, 620 F. Supp. 2d 109, 117 (D.D.C. 2009) ("[C]ourts may transfer cases *sua sponte* under § 1404(a)." (footnote omitted)).

(citing *Sinochem Intl' Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 425–26, 430–34 (2007))); *Aftab v. Gonzalez*, 597 F. Supp. 2d 76, 79 (D.D.C. 2009) ("Although the defendants have moved to dismiss for lack of subject matter jurisdiction, the motion to transfer venue . . . may be addressed first."). Defendants' Rule 12(b)(1) and Rule 12(b)(6) arguments are best addressed by the courts where Spaeth should have brought his claims.

## I.    Severance

"The court may sever claims if parties are improperly joined." *Davidson v. Dist. of Columbia*, 736 F. Supp. 2d 115, 119 (D.D.C. 2010) (citing Fed. R. Civ. P. 21). "In determining whether parties are misjoined for purposes of Rule 21, courts apply the permissive joinder requirements of Rule 20(a)." *Id.* (citing *Montgomery v. STG Int'l, Inc.*, 532 F. Supp. 2d 29, 35 (D.D.C. 2008)). As relevant here, defendants are properly joined if "any right to relief is asserted against them . . . with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and if "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2).[7] "[T]he two prongs of Rule 20(a) 'are to be liberally construed in the interest of convenience and judicial economy . . . in a manner that will secure the just, speedy, and inexpensive determination of th[e] action.'" *Davidson*, 736 F. Supp. 2d at 119 (second and third alterations in the original) (quoting *Lane v. Tschetter*, No. 05-cv-1414 (EGS), 2007 WL 2007493, at *7 (D.D.C. July 10, 2007)). If the Rule 20(a) test is not satisfied, however, then defendants are not properly joined and the claims against them can be severed under Rule 21. *See, e.g.*, *id.* at 119–22.

Pursuant to the first prong of the Rule 20(a) test, Spaeth's claims against defendants

---

[7] The first prong of this two-part test may also be satisfied if "any right to relief is asserted against [defendants] jointly[ or] severally," Fed. R. Civ. P. 20(a)(2)(A), but Spaeth has not alleged that defendants are jointly or severally liable under the ADEA.

"aris[e] out of the same transaction, occurrence, or series of transactions or occurrences," Fed. R.

Civ. P. 20(a)(2), only if they are "'logically related.'" *Maverick Entm't Grp., Inc. v. Does 1–*

*2,115*, --- F. Supp. 2d ----, ----, 2011 WL 1807428, at *5 (D.D.C. 2011) (quoting *Disparte v.*

*Corporate Exec. Bd.*, 223 F.R.D. 7, 10 (D.D.C. 2004)); *accord Bederson v. United States*, 756 F.

Supp. 2d 38, 54 (D.D.C. 2010).  "The logical relationship test is flexible because 'the impulse is

toward entertaining the broadest possible scope of action consistent with fairness to the parties;

joinder of claims, parties and remedies is strongly encouraged.'"  *Disparte*, 223 F.R.D. at 10

(quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966)).  Yet, Spaeth "cannot

join defendants who simply engaged in similar types of behavior, but who are otherwise

unrelated; *some allegation of concerted action between defendants is required*."  *Grynberg v.*

*Alaska Pipeline Co.*, No. 95-cv-725(TFH), 1997 WL 33763820, at *1 (D.D.C. March 27, 1997)

(emphasis added); *see id.* at *2 (examining cases and concluding that "[c]ourts have not joined

totally independent actors, without any allegation of concert or conspiracy" (citing *United States*

*v. Mississippi*, 380 U.S. 128 (1965); *Nassau Cnty. Ass'n of Ins. Agents v. Aetna Life & Cas.*, 497

F.2d 1151 (2d Cir. 1974); *Cohen v. Dist. of Columbia Nat'l Bank*, 59 F.R.D. 84 (D.D.C. 1972))).

As in *Davidson*, other than "the fact that [Spaeth's] claims all arise under" the ADEA,

Spaeth has "offered nothing to suggest that the claims are logically related in any way."  736 F.

Supp. 2d at 121.  Spaeth has not alleged any "concerted action between defendants."  *Grynberg*,

1997 WL 33763820, at *1.  He has not alleged that defendants conspired in declining to

interview him or offer him a job,[8] nor has he claimed that they acted pursuant to a shared policy.

By any reading of Spaeth's Amended Complaint, defendants acted independently when they

evaluated his candidacy and decided, for whatever reason, against interviewing or hiring him.

---

[8] The fact that Missouri interviewed Spaeth but did not hire him, while none of the other
defendants interviewed him, underscores that defendants cannot be treated in a similar fashion.

Furthermore, the fact that defendants "are members of a common industry is not sufficient to satisfy the requirement that the right to relief against all [d]efendants arises out of the same transaction or occurrence." *Wynn v. Nat'l Broad. Co., Inc.*, 234 F. Supp. 2d 1067, 1078 (C.D. Cal. 2002); *see id.* at 1079 (not finding "a single authority in which a plaintiff was permitted to join separate employers in an industry, for any reason, much less based solely on their classification as an employer in the industry").

As to the second prong, the fact that Spaeth's claims are premised on the same legal theory is insufficient for showing that they raise common "question[s] of law or fact." Fed. R. Civ. P. 20(a)(2)(B). "'Common issues of law does not mean common issues of an area of the law.'" *Grennell v. Western Southern Life Ins. Co.*, 298 F. Supp. 2d 390, 398 (S.D. W.Va. 2004) (quoting *Graziose v. Am. Home Prods. Corp.*, 202 F.R.D. 638, 640 (D. Nev. 2001));[9] *accord Wynn*, 234 F. Supp. 2d at 1081 ("While it is true that Plaintiffs have alleged claims against Defendants based on the same general theory of law, this is not a sufficient ground to find that their claims raise common legal or factual questions." (collecting cases)). Accordingly, when determining whether employment discrimination claims raise common questions of law or fact for purposes of permissive joinder, "courts often consider the circumstances surrounding the [] claims, including the people involved, the location, the time frame, and the defendant's pattern of

---

[9] The example the *Grennell* court used to illustrate this principle, while addressing the joinder of multiple plaintiffs, is equally relevant where the joinder of multiple defendants is at issue:

> For example, while two or more persons could sue a common defendant for Title VII discrimination, based upon the same policies or conduct, all plaintiffs could not join together in one large lawsuit, to sue all defendants for Title VII discrimination, just because all their claims involve Title VII discrimination.

298 F. Supp. 2d at 398–99 (internal quotation marks and citation omitted); *see id.* at 399 ("joinder [is] not proper where plaintiffs would proceed on same legal theory against common defendant" (citing *Minasian v. Standard Chartered Bank*, No. 93-c-6131, 1994 WL 395178 (N.D. Ill. July 27, 1994))).

behavior." *Montgomery*, 532 F. Supp. 2d at 35 (citing *Disparte*, 223 F.R.D. at 11–12).

Spaeth has not alleged that any single person or group of people was involved in the decisions of more than one defendant not to interview or hire him.  Rather, he is the only person common to his claims.  Nor has Spaeth alleged that defendants' actions occurred in the same location.  He claims that defendants interviewed job candidates at the 2010 AALS Faculty Recruitment Conference in Washington, D.C. (Am. Compl. ¶¶ 27–29), but he does not claim that they decided not to consider his candidacy there.  Indeed, Spaeth's complaint suggests that administrators at the defendant law schools who did not interview him decided against doing so on their own campuses, at various points in time prior to their coming to Washington.  (*See id.* ¶¶ 20–24; *see also* Michigan State Mot. at 30; Iowa Mot. at 4–5.)  It seems equally likely that Missouri, the only defendant to interview Spaeth, decided not to hire him after its recruiting team returned home from Washington.  (*See* Missouri Mot. at 15)

In arguing against severance, Spaeth does not address either prong of the Rule 20(a) test. He argues neither that his claims against defendants are logically related nor that they raise common questions of law and fact.  Fed. R. Civ. P. 20(a).  Spaeth has therefore conceded that defendants are not properly joined.  *See Three Lower Cntys. Cmty. Health Servs. Inc. v. U.S. Dep't of Health & Human Servs.*, 517 F. Supp. 2d 431, 434 n.2 (D.D.C. 2007) ("'It is well understood in this Circuit that when a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.'" (quoting *Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 238 F. Supp. 2d 174, 178 (D.D.C. 2002) (citing *FDIC v. Bender*, 127 F.3d 58, 67–68 (D.C. Cir. 1997)))).

Spaeth protests, however, that he would be prejudiced if his claims are severed pursuant

to Rule 21 because "conducting separate trials could result in inconsistent judgments" and because "conducting consolidated discovery would result in substantial conservation of scarce judicial resources."  (Pl.'s Michigan State Opp'n at 29.[10])  While prejudice typically figures in courts' severance analysis, *see Davidson*, 736 F. Supp. 2d at 119 (citing *M.K.*, 216 F.R.D. at 138),[11] Spaeth's arguments fail.

Spaeth's concern regarding potentially inconsistent judgments centers on the possibility that, if his lawsuit is split into two or more separate cases, "two juries . . . could each decide that the law school defendant present [before each] *was required to hire [him]*, which would prejudice both [him] and the law schools."  (Pl.'s Michigan State Opp'n at 30 (emphasis added).)  But Spaeth's Amended Complaint does not seek an order that defendants "hire" him.  Rather, he seeks "[a]n injunction ordering each [d]efendant institution *to offer [him]* a tenure-track teaching position."  (Am. Compl. at 51 (emphasis added).)  "Thus, even if two juries hypothetically found in favor of [Spaeth] and ordered two law schools to offer [him] a teaching position, [he] would

---

[10] Spaeth raises identical arguments against severance and transfer in his oppositions to the motions to dismiss filed by Michigan State, Iowa, Missouri, and Hastings.  (*See* Pl.'s Michigan State Opp'n at 28–34; Iowa Opp'n at 34–39; Pl.'s Missouri Opp'n at 18–23; Pl.'s UC Hastings Opp'n at 32.)  To avoid repetition, the Court will cite only to the Michigan State filings.

[11] Defendants argue, however, that Spaeth "flips the severance standard on its head" when he raises the threat of prejudice as an argument against severance because "[c]ourts use potential prejudice as an additional basis *for granting motions to sever*, even when the permissive joinder standards have been met."  (Defendant Michigan State University College of Law's Reply in Support of its Renewed Motion to Dismiss, or, in the alternative, to Sever and Transfer Venue, Jan. 11, 2012 [Dkt. No. 37] ("Michigan State Reply"), at 15. (emphasis in the original).  Defendants' characterization of the case law is compelling.  *See, e.g., Davidson*, 736 F. Supp. 2d at 120 ("Rule 21 must be read in conjunction with Rule 42(b), which allows the court *to sever claims in order to avoid prejudice to any party*" (emphasis added) (citing *Brereton v. Commc'ns Sattelite Corp.*, 116 F.R.D. 162, 163 (D.D.C. 1987))); *M.K.*, 216 F.R.D. at 138 (same); *El Aguila Food Prods., Inc. v. Gruma Corp.*, 167 F. Supp. 2d 955, 959 (S.D. Tex. 2001) ("The fact that *Plaintiffs are properly joined* does not conclude the severance inquiry. . . . A district court has broad discretion to order the severance of particular claims and afford them separate treatment when doing so advances the administration of justice and no party suffers prejudice by virtue of the severance." (emphasis added)).

select the offer he found preferable." (Michigan State Reply at 16.)  Because Spaeth's "prayer for relief seems to contemplate such an outcome in the case as filed," the Court agrees that he "has not stated how severance would be prejudicial to any party" with regard to the potential for inconsistent judgments. (*Id.*)

    To the contrary, Spaeth's worry about inconsistent judgments reveals why severance is particularly appropriate here.  Imagine that Spaeth's claims proceed to separate trials, and that one jury concludes that one defendant law school violated his rights under the ADEA, and that another jury concludes that a different defendant law school did not violate his rights.  Nothing in this scenario is inconsistent with Spaeth's Amended Complaint, which alleges no links between defendants' actions toward him.  "Given that [Spaeth] has not alleged any concerted action amongst the defendants, it is impossible for the verdicts to be inconsistent." (*Id.* at 16–17.)

    Spaeth also claims that he would be prejudiced by severance because "allowing [him] to proceed in a single forum against all defendants would significantly conserve judicial resources" in that "[t]he defendants would take one, coordinated deposition of [him], and of his fact and expert witnesses, instead of having to subject him and his witnesses to five or more sets of depositions on an identical subject matter." (Pl.'s Michigan State Opp'n at 31.)  He additionally alleges that that "[a]ny disputes about the scope or conduct of party discovery, or third party discovery, could most economically be resolved by a single judge instead of by several judges." (*Id.* at 32.)  Yet, nothing in Spaeth's Amended Complaint supports the assertions that defendants would seek to depose him about "identical" matters or that discovery pertaining to all of Spaeth's claims could be effectively coordinated.[12]  Spaeth has alleged that each defendant law school

---

[12] Furthermore, the Court agrees with Michigan State that the fact that Spaeth "has elected to sue

discriminated against him based on his age; he has not alleged that they had similar hiring criteria, were looking for the same types of candidates, or used comparable methods for determining whom to interview and hire.  In the absence of such allegations, refusing to sever Spaeth's claims would hardly serve judicial economy.

Defendants, on the other hand, *have* established the potential for prejudice if the claims against them are not severed into separate suits.  "As the case is currently configured, there is a substantial risk that one [defendant law school] will be tainted by the alleged misdeeds of another, unfairly resulting in guilt by association."  *Wynn*, 234 F. Supp. 2d at 1089 (citing *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296–97 (9th Cir. 2000); *Sidari v. Orleans Cnty.*, 174 F.R.D. 275, 282 (W.D.N.Y. 1996)).  Unless Spaeth's claims are severed, there is a real "risk that a decision by one [defendant] might taint the jury's view of another decision made by a different [defendant]."  *Id.*  Trying Spaeth's claims separately eliminates this risk, and offsets any prejudice arguments he raises.

Having applied the two-prong test contemplated by Rule 20(a) and having considered Spaeth's objections, the Court concludes that defendants were misjoined in this action, and severs the claims against Michigan State, Missouri, UC Hastings, and Iowa into four new, separate cases (collectively, the "Severed Cases," or individually as cited by the particular defendant's name).  Fed. R. Civ. P. 21.[13]

---

multiple schools" for their independent conduct "should not deprive each individual defendant of the opportunity to depose [him] in accordance with the time limits proscribed by the Federal Rules of Civil Procedure."  (Michigan State Reply at 19.)

[13] "'[S]everance of claims under Rule 21 results in the creation of separate actions.'"  *Abuhouran v. Nicklin*, 764 F. Supp. 2d 130, 133 (D.D.C. 2011) (alteration in the original) (quoting *In re Brand-Name Prescription Drugs Antitrust Litig.*, 264 F. Supp. 2d 1372, 1376 (J.P.M.L. 2003)). Accordingly, Spaeth's claims against Michigan State University College of Law are severed into

II.     **Transfer**

The Court now considers whether it furthers "the convenience of parties and witnesses" and is "in the interest of justice" to transfer each Severed Case "to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). A threshold question, derived from the text of the statute, is whether a potential "transferee court [is] a place of proper venue." *In re Scott*, 709 F.2d 717, 720 (D.C. Cir. 1983) (per curiam) (citing *Hoffman v. Blaski*, 363 U.S. 335 (1960)). As applicable here, venue is proper in "a judicial district in which any defendant resides." 28 U.S.C. § 1391(b)(1); *see Diersen v. Walker*, No. 99-5389, 2000 WL 274238, at *1 (D.C. Cir. Feb. 2, 2000) (citing *Rebar v. Marsh*, 959 F.2d 216, 219 (11th Cir. 1992) (applying 28 U.S.C. § 1391 to ADEA claims)). Accordingly, the Court considers transferring each Severed Case to the district in which the particular defendant law school and corresponding officer are located, *see* 28 U.S.C. § 1391(c) (providing that, for purposes of the general venue statute, natural persons "reside" where they are domiciled and that corporations "reside" where they are "subject to the court's personal jurisdiction"): Michigan State to the Western District of Michigan (*see* Am. Compl. ¶¶ 7–8), Missouri to the Western District of Missouri (*see id.* ¶¶ 9–10), UC Hastings to the Northern District of California (*see id.* ¶¶ 11–12), and Iowa to the Southern District of Iowa (*see id.* ¶¶ 14–15).[14]

---

one new case; his claims against the University of Missouri School of Law and Brady J. Deaton, Chancellor of the University of Missouri, are severed into another new case; his claims against Hastings College of the Law and its Chancellor and Dean, Frank H. Wu, are severed into another new case; and his claims against the University of Iowa College of Law and its President, Sally Mason, are severed into another new case. Only Spaeth's claims against Maryland and Georgetown remain in the present suit.

[14] Because the parties have argued the transfer issue with regard to 28 U.S.C. § 1404(a), the Court proceeds to address it pursuant to that framework. The Court is not convinced, however, that venue over any of the Severed Cases is proper in the District of Columbia. Spaeth has not

Under § 1404(a), Courts have broad discretion to decide questions of "'transfer according to individualized, case-by-case consideration of convenience and fairness.'" *Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d 48, 50 (D.D.C. 2000) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 27 (1988)). In exercising this discretion, "the Court considers several private and public interest factors." *Pueblo v. Nat'l Indian Gaming Comm'n*, 731 F. Supp. 2d 36, 39 (D.D.C. 2010) (citing *Onyeneho v. Allstate Ins. Co.*, 466 F. Supp. 2d 1, 3 (D.D.C. 2006) (citing *Reiffin*, 104 F. Supp. 2d at 51–52)).

> Private interest factors include, but are not limited to: (1) plaintiffs' privilege of choosing the forum; (2) defendant's preferred forum; (3) location where the claim arose; (4) convenience of the parties; (5) convenience of witnesses, but only to the extent that witnesses may be unavailable for trial in one of the fora; and (6) ease of access to sources of proof. Public interest considerations include: (1) the transferee's familiarity with the governing law; (2) the relative congestion of the courts of the transferor and potential transferee; and (3) the local interest in deciding local controversies at home.

*Id.* (internal quotation marks and citations omitted).

### 1.    Private Interest Factors

The private interest factors weigh in favor of transferring the Severed Cases to the judicial districts where the defendants are located. First, "[a]lthough a plaintiff's choice of forum is generally given deference in determining whether a transfer of venue is justified, *Thayer/Patricof Educ. Funding, L.L.C. v. Pryor Res., Inc.*, 196 F. Supp. 2d 21, 31 (D.D.C. 2001), less deference is given to a plaintiff's choice when that choice is not plaintiff's home forum." *Pueblo*, 731 F. Supp. 2d at 42 (citing *Shawnee Tribe v. United*

---

alleged that defendants Michigan State, Missouri, UC Hastings, and Iowa reside in the District, *id.* § 1391(b)(1), nor, as discussed below, has he claimed that the "events or omissions giving rise to" his claims occurred in the District. *Id.* § 1391(b)(2). Accordingly, the Court could have easily invoked 28 U.S.C. § 1406, which applies where venue is improper. The conclusion would be the same under either analysis.

*States*, 298 F. Supp. 2d 21, 24 (D.D.C. 2002)); *see Piper Aircraft Co. v. Reyno*, 454 U.S.

235, 255–56 (1981).  Since Spaeth is a citizen of Missouri who is domiciled in Kansas

City (Am. Compl. ¶ 6), his choice of forum in the District of Columbia is entitled to very

little deference.[15]

Second, three defendants have stated their preference to litigate Spaeth's claims in

their home forums.  (*See* Michigan State Mot. at 31; Missouri Mot. at 15; Iowa Mot. at

11–12.)  Third, and perhaps most importantly, Spaeth's claims arose in defendants' home

forums: defendants decided not to interview or hire him on their campuses, and not at the

AALS Faculty Recruitment Conference in Washington, D.C.  (*See* Michigan State Mot.

at 30 ("All [hiring committee] meetings related to faculty hiring took place on the MSU

Law campus in East Lansing, Michigan, including those in which the [c]ommittee

decided to whom MSU Law would offer interview slots and to whom it should offer

MSU Law faculty positions." (citing the declaration of the Associate Dean for Academic

Affairs, who assists the hiring committee with the annual hiring process)); Missouri Mot.

at 15 ("the events giving rise to the claims against the Missouri [d]efendants occurred in

Missouri"); Iowa Mot. at 11 ("With respect to [Spaeth's] application to become a law

---

[15] "The fact that [Spaeth's] counsel is in the District of Columbia is of little significance."
*Kazenercom TOO v. Turan Petroleum, Inc.*, 590 F. Supp. 2d 153, 163 (D.D.C. 2008) (citing
*Reiffin*, 104 F. Supp. 2d at 52 n.7); *see McClamrock v. Eli Lilly & Co.*, 267 F. Supp. 2d 33, 40–
41 (D.D.C. 2003) ("'The location of counsel carries little, if any weight, in an analysis under
§ 1404(a).'" (quoting *Armco Steel Co. v. CSX Corp.*, 790 F. Supp. 311, 324 (D.D.C. 1991))).
Furthermore, "[t]he deference to plaintiff's choice is further mitigated if the 'choice of forum has
no meaningful ties to the controversy and no particular interest in the parties or subject matter.'"
*Pueblo*, 731 F. Supp. 2d at 41 (quoting *Trout Unlimited v. U.S. Dep't of Agric.*, 944 F. Supp. 13,
16 (D.D.C. 1996)); *see United States ex rel. Westrick v. Second Chance Body Armor, Inc.*, 771 F.
Supp. 2d 42, 47 (D.D.C. 2011) ("A plaintiff's choice of forum is entitled to deference, *unless
that forum has no meaningful relationship to the [plaintiff's] claims or to the parties.*" (emphasis
added)).  As discussed below, Spaeth's claims have pitifully few ties to the District.

professor, the entire evaluation process occurred on campus in Iowa City, Iowa by members of the Iowa College of Law Faculty.  The decision to not interview [Spaeth] . . . was made in Iowa City."); *id.* at 5 ("All of the [hiring committee's] work reviewing and discussing FAR forms, deciding which candidates to interview, obtaining pre-interview approval from the University and extending interview invitations for the [AALS Faculty Recruitment Conference] was carried out in Iowa City between August 12 and October 18, 2010." (citing the declaration of the co-chair of the Iowa College of Law Faculty Appointments Committee).)  *See Shawnee Tribe*, 298 F. Supp. 2d at 25 (stating in support of a transfer that "the decisionmaking process, by and large, has not been substantially focused in this forum"); *accord Trout Unlimited*, 944 F. Supp. at 19; *Kafack v. Primerica Life Ins. Co.*, 934 F. Supp. 3, 6–7 (D.D.C. 1996).[16]

Because Spaeth's claims center on events that occurred in Michigan, Missouri, Iowa, and California, the fourth, fifth, and sixth private interest factors, regarding the convenience of the parties and witnesses and access to sources of proof, also weigh in favor of transfer.  Litigating Spaeth's claims in defendants' home forums will be more convenient for defendants; more convenient for Spaeth, a Missouri resident, with regard to his claims against Missouri; and no less convenient for Spaeth with regard to his claims against the defendants in the other Severed Cases.  Furthermore, given that the vast majority of potential witnesses in these actions will reside in defendants' home forums, and that Spaeth has not argued that any reside in the District of Columbia or would be unavailable for trial in any of defendants' home forums, transfer would be more

---

[16] It is not enough for Spaeth, in his oppositions to defendant's motions, to rely on the fact that all defendants except for Missouri denied him an interview at the 2010 AALS Recruitment Conference in Washington, D.C., to support the claim that relevant events occurred here.  (*See* Pl.'s Michigan State Opp'n at 31–32; Pl.'s Iowa Opp'n at 37.)

convenient for witnesses as well.[17]   The same analysis applies with regard to access to sources of proof.

### 2.    Public Interest Factors

"Courts in this district have consistently found that the public interest favors allowing [courts in] the state in which the alleged wrongful conduct took place to resolve conflicts arising from acts committed entirely in that state." *Levin v. Majestik Surface Corp.*, 654 F. Supp. 2d 12, 16 (D.D.C. 2009) (citing *Kafack*, 934 F. Supp. at 9).  This general principle applies here, as an assessment of the three public interest factors listed above shows.

"Although 'all federal courts are presumed to be equally familiar with the law governing federal statutory claims,'" *Wyandotte Nation v. Salazar*, --- F.Supp.2d ----, ---- 2011 WL 5841611, at *5 (D.D.C. 2011) (quoting *Miller v. Insulation Contractors, Inc.*, 608 F. Supp. 2d 97, 103 (D.D.C. 2009)), the first public interest factor nonetheless supports transfer of at least some of the Severed Cases.  Three defendants have argued that they are immune to Spaeth's claims under the Eleventh Amendment (*see* Iowa Mot. at 5–7; Missouri Mot. at 4–5; UC Hastings Mot. at 5–8), and courts in their home forums have addressed related arguments in the past.  *See, e.g.*, *Brine v. Univ. of Iowa*, 90 F.3d 271, 275 (8th Cir. 1996) (affirming the district court's holding that the University of Iowa

---

[17] Spaeth argues that defendants' witnesses could be deposed in their home forums and, if they are unable to travel to the District of Columbia for trial, excerpts from their deposition transcripts "could be used at trial as a *de bene esse* deposition."  (Pl.'s Michigan State Opp'n at 32; Pl.'s Missouri Opp'n at 21; Pl.'s Iowa Opp'n at 37.)  Yet, "[w]hen considering the convenience of witnesses, a court must pay particular attention to whether important witnesses will be available *to give live trial testimony*."  *Westrick*, 771 F. Supp. 2d at 48–49 (emphasis added) (citing *Montgomery*, 532 F. Supp. 2d at 33).  Furthermore, "[a] transferee district . . . may be more convenient for witnesses even if the witnesses would not be unavailable to testify in the transferor district."  *Id.* (citing *Montgomery*, 532 F. Supp. 2d at 33 n.5).

and its Board of Regents were immune, under the Eleventh Amendment, from suit on

plaintiff's § 1983 claims); *Scherer v. Curators of Univ. of Mo.*, 49 Fed. App'x 658, 658

(8th Cir. 2002) (affirming the district court's holding that the University of Missouri and

its Curators were immune, under the Eleventh Amendment, from suit on plaintiff's ADA

claim) (citing *Sherman v. Curators of the Univ. of Mo.*, 871 F. Supp. 344, 348 (W.D. Mo.

1994))); *Gallagher v. Univ. of Cal., Hastings Coll. of the Law*, No. C011277PJH, 2001

WL 1006809, at *5 (N.D. Cal. Aug. 16, 2011) (holding that UC Hastings was immune,

under the Eleventh Amendment, from suit on plaintiff's § 1983 claims, and granting

motion to dismiss).  Because the relevant circuit and district courts "have specialized

knowledge of" at least some defendants, and their Eleventh Amendment immunity

claims, transferring the Severed Cases will advance "'judicial efficiency.'"  *Wyandotte*,

2011 WL 5841611, at *5 (quoting *F.T.C. v. Cephalon, Inc.*, 551 F. Supp. 2d 21, 31

(D.D.C. 2008)).

The second public interest factor, regarding the relative congestion of the

transferor and potential transferee courts, weighs against transfer of three of the four

Severed Cases.  "In this district, 'potential speed of resolution' is examined by comparing

the median filing times to disposition in the courts at issue."  *Pueblo*, 731 F. Supp. 2d at

40 n.2 (quoting *Parkridge 6, LLC v. United States Dep't of Transp.*, No. 09-cv-01478,

2009 WL 3720060, at *3 (D.D.C. Nov. 9, 2009); citing *Cephalon, Inc.*, 551 F. Supp. 2d

at 31, 33 n.8).  The median time from filing to disposition in this district is 6.6 months.

U.S. District Courts—Median Time Intervals from Filing to Disposition of Civil Cases

Terminated, by District and Method of Disposition, During the 12-Month Period Ending

June 30, 2011,

http://www.uscourts.gov/uscourts/Statistics/StatisticalTablesForTheFederalJudiciary/201
1/C05Jun11.pdf (last visited Feb. 17, 2012). The median times from filing to disposition
in the potential transferee courts are 5.8 months (Western District of Michigan), 8.4
months (Western District of Missouri), 8.0 months (Northern District of California), and
9.9 months (Southern District of Iowa). *Id.* Therefore, the congestion factor favors only
the transfer of the Michigan State case.

The final public interest factor, however, favors the transfer of all of the Severed
Cases. "'There is a local interest in having localized controversies decided at home.'"
*Wyandotte*, 2011 WL 5841611, at *4 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501,
509 (1947), *superseded by statute on other grounds*, 28 U.S.C. § 1404(a), *as recognized
in Am. Dredging Co. v. Miller*, 510 U.S. 443, 449 n.2 (1994)). What's more, "the fact
that [Spaeth's] cause of action arises under federal law does not mean that the subject of
his lawsuit does not present an issue of local controversy." *Bergmann v. U.S. Dep't of
Transp.*, 710 F. Supp. 2d 65, 75 (D.D.C. 2010). Especially given that they are state
universities, defendants' hiring practices are indisputably of greater interest in their home
forums than they are in the District of Columbia. Spaeth does not argue to the contrary.

Indeed, in opposing transfer, Spaeth barely addresses the private and public
interest factors.[18] Rather, Spaeth argues as he did in opposing severance that transfer
might lead to inconsistent judgments and waste judicial resources. (*See* Pl.'s Michigan

_____

[18] That Spaeth contests the statistics on court congestion put forward by Michigan State (*see* Pl.'s
Michigan State Opp'n at 32–34), Missouri (*see* Pl.'s Missouri Opp'n at 23), and Iowa (*see* Pl.'s
Iowa Opp'n at 38–38), is irrelevant, as the Court has concluded that this factor generally weighs
against transfer. The only additional factor Spaeth addresses in his oppositions to defendants'
motions is the convenience of witnesses, and the Court has rejected his arguments. (*See supra*
n.17.)

State Opp'n at 29–32; Pl.'s Iowa Opp'n at 35–38; Pl.'s Missouri Opp'n at 19–22; Pl.'s UC Hastings Opp'n at 32.)  These arguments are as unavailing in the transfer context as they are in the severance context.  (*See supra* pp. 9–11.)

Overall, seven of the nine private and public interest factors weigh heavily in favor of transfer.  The Court concludes that "the 'balance of convenience of the parties and witnesses and the interest of justice are in'" favor of transferring each Severed Case to the district in which the particular defendant law school and corresponding officer are located: Michigan State to the Western District of Michigan, Missouri to the Western District of Missouri, UC Hastings to the Northern District of California, and Iowa to the Southern District of Iowa.  *Shawnee Tribe*, 298 F. Supp. 2d at 23 (quoting *Armco Steel Co.*, 790 F. Supp. at 323).

## CONCLUSION

Because defendants were improperly joined in this action, the Court will sever Spaeth's claims against them into separate suits, Fed. R. Civ. P. 20(a)(2), 21, and transfer those suits to defendants' home forums pursuant to 28 U.S.C. § 1404(a).  A separate order accompanies this Memorandum Opinion.

 

 

_____/s/_____
ELLEN SEGAL HUVELLE
United States District Judge

Date:   February 17, 2012