**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Nicholas Spaeth, | |
| *Plaintiff*, | |
| v. | Civil Action No. 11-1376 (ESH) |
| Georgetown University, | |
| *Defendant*. | |

<u>**MEMORANDUM OPINION**</u>

Plaintiff Nicholas Spaeth sued six law schools alleging that they unlawfully discriminated against him based on his age when they declined to interview or to hire him after he applied for tenure-track teaching positions through the 2010 American Association of Law Schools ("AALS") Faculty Appointments Register.  (*See* Amended Complaint, Nov. 7, 2011 [Dkt. No. 10] ("Am. Compl.").)  In prior Orders, this Court severed Spaeth's claims against five institutions and transferred them to those defendants' home forums.  (*See* Order, Feb. 17, 2012 [Dkt. No. 59]; Order, March 8, 2012 [Dkt. No. 68].)  Only Spaeth's claims against Georgetown Law ("Georgetown") remain in the present suit.

Before the Court are Georgetown's motion to dismiss, plaintiff's opposition thereto, and Georgetown's reply.  (*See* Georgetown University's Motion to Dismiss, Dec. 16, 2011 [Dkt. No. 20] ("Def.'s Mot."); Plaintiff's Opposition to Defendant Georgetown University's Motion to Dismiss, Jan. 17, 2012 [Dkt. No. 41] ("Pl.'s Opp'n"); Reply in Support of Georgetown University's Motion to Dismiss, Jan. 24, 2012 [Dkt. No. 49] ("Def.'s Reply").)  Pursuant to Federal Rule of Civil Procedure 12(b)(6), Georgetown argues that Spaeth has failed to state a claim for age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. §§

621 *et seq.* ("ADEA"), and under the District of Columbia's Human Rights Act, D.C. Code §§ 2-1401.01 *et seq.* ("DCHRA").  Georgetown also argues that Spaeth's prayers for compensatory and punitive damages are improper under the ADEA and must be dismissed from his Amended Complaint.  For the reasons stated below, the Court will deny Georgetown's motion insofar as it seeks dismissal of the age discrimination claim, but will grant it insofar as it seeks to dismiss the prayers for compensatory and punitive damages under the ADEA.

## BACKGROUND

Spaeth was born in 1950.  (Am. Compl. ¶ 1)  He received his undergraduate degree from Stanford University in 1972; his master's degree from Oxford University, where he was a Rhodes Scholar, in 1974; and his law degree from Stanford Law, where he served as Managing Editor of the Stanford Law Review, in 1977.  (*Id.* ¶¶ 38–40.)  Spaeth clerked for Eighth Circuit Judge Myron Bright and Supreme Court Justice Byron White.  (*Id.* ¶¶ 41–42.)  After practicing as a trial lawyer with an emphasis on commercial disputes, Spaeth was elected to two terms as Attorney General for North Dakota.  (*Id.* ¶¶ 44–45.)  All told, he alleges that he "has over thirty years of high-level experience as a legal practitioner" (*id.* ¶ 43), including as a partner at two national law firms and as an executive at various large corporations.  (*Id.* ¶¶ 48–59.)  In addition, Spaeth claims "four years of law school teaching experience."  (*Id.* ¶ 61.)  He was adjunct professor of law at the University of Minnesota Law School from 1980 through 1983, where he taught constitutional law, and visiting professor of law at the University of Missouri during the 2010–11 academic year, "where he taught in the areas of financial services regulation, securities, mergers and acquisitions, and business and accounting."  (*Id.*)  In his Amended Complaint, Spaeth boasts of "an impressive scholarly record," citing, *inter alia*, "the *American Indian Law*

*Deskbook*," which he edited; "numerous other publications" which he authored; and three "groundbreaking" cases which he argued before the Supreme Court.  (*Id.* ¶ 63.)

In 2010, when he was sixty years old, Spaeth applied for a teaching position at Georgetown and many other law schools through AALS's Faculty Appointments Register ("FAR").  (*Id.* ¶ 28.)  AALS "is a nonprofit educational association of 172 law schools and their constituent faculty members."  (*Id.* ¶ 18.)  AALS "coordinates hiring for law schools by having applicants for law school teaching positions pay a fee . . . and submit information through its Faculty Appointments Register."  (*Id.* ¶ 20.)  Applicants submit "a short profile of [their] education, background, and teaching interests," which is compiled on the "mandatory" FAR Form, and, if they wish, a full resume.  (*Id.* ¶ 21.)  Spaeth alleges, however, that "[a]lthough candidates are asked to submit their preferences and interests in teaching, on information and belief, most law schools are also interested in talented backgrounds and will hire individuals outside their expressed area of interest to teach other subjects."  (*Id.* ¶ 25.)

Applicants' FAR Forms and resumes are "distributed to all AALS members who are recruiting" prior to the Faculty Recruitment Conference.  (*Id.* ¶ 22.)  Concurrently, "AALS members generally list, in the AALS's Placement Bulletin, the descriptions of open positions and the type of candidate sought."  (*Id.* ¶ 23.)  "The process culminates in" the annual Faculty Recruitment Conference "held in the fall Washington, D.C., to which the law schools send their recruiting teams to interview applicants" whom they have selected based on the applicants' FAR Forms and resumes.  (*Id.* ¶ 24.)

Although Spaeth applied for a teaching position with Georgetown "and every other AALS member school through the Faculty Appointments Register during the 2010 hiring cycle" (*id.* ¶ 28), he "received only two interviews" at the fall 2010 Faculty Recruitment Conference.

(*Id.* ¶ 29.)  One interview was with the University of Missouri, where Spaeth was teaching at the time as a visiting professor, and the other was with the University of Nebraska.  (*Id.*)  Spaeth "received no job offers during the 2010 hiring cycle."  (*Id.*)

The FAR Form and resume that Spaeth submitted to Georgetown and the other law schools to which he applied detail his qualifications, as described above.[1]  In addition, the FAR Form required Spaeth to list his teaching preferences in terms of subjects he would "most like to teach," "other subjects [he] may be interested in teaching," and "other subjects [he] would be willing to teach, if asked," and inquired whether he had any "comments" as to each category. (Def.'s Mot., Ex. 1 (capitalization altered).)  As to the first category, Spaeth wrote that he would "most like to teach" courses on financial instruments, insurance law, and business associations (including agency and partnership, corporations, and business planning).  (*Id.*)  As to the second category, Spaeth listed the "other" courses that he might "be interested in teaching" as securities regulation, corporate finance (including corporate reorganizations), constitutional law, and Native American law.  (*Id.*)  As to the third category, Spaeth wrote that, "if asked," he "would be willing to teach" courses on criminal law and international business transactions.  (*Id.*)  Spaeth did not provide "comments" for any of the three categories of his teaching interests.  (*Id.*)

---

[1] Georgetown has attached copies of Spaeth's FAR Form and resume to its motion to dismiss as exhibits 1 and 2, respectively.  Ordinarily, if "matters outside the pleadings are presented to and not excluded by the court" in the context of considering a motion to dismiss, "the motion must be treated as one for summary judgment."  Fed. R. Civ. P. 12(d).  However, because Spaeth's FAR Form and resume are "incorporated by reference in the [Amended C]omplaint" and are "documents upon which [Spaeth's Amended C]omplaint necessarily relies," they "are not 'outside' the pleadings" and "the [C]ourt may consider" them without converting Georgetown's filing into a motion for summary judgment.  *Hinton v. Corr. Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009) (citations and some internal quotation marks omitted) (collecting cases); *see Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004); *Marshall v. Honeywell Tech. Solutions, Inc.*, 536 F. Supp. 2d 59, 65 (D.D.C. 2008) ("[W]here a document is referred to in the complaint and is central to the plaintiff's claim, such a document attached to the motion mappers may be considered without converting the motion [to dismiss] to one for summary judgment." (citation and internal quotation marks omitted)).

Spaeth does not allege, and Georgetown does not disclose, what Georgetown stated, if anything, in the AALS Placement Bulletin with regard to the specialties it was seeking.  Nor have the parties described those candidates whom Georgetown interviewed at the Faculty Recruitment Conference.  Ultimately, according to Spaeth's Amended Complaint, Georgetown hired three new professors.  (Am. Compl. ¶ 165.)  Spaeth alleges that all three "are less qualified and decades younger than" he is.  (*Id.* ¶ 166; *see id.* ¶¶ 168–75 (comparing the qualifications of Georgetown's first hire with Spaeth's); *id.* ¶¶ 178–84 (same, Georgetown's second hire); *id.* ¶¶ 187–91 (same, Georgetown's third hire).)  Spaeth also alleges that "Georgetown's first hire was hired to teach in taxation," its "second hire was hired to teach taxation and tax policy," and its "third hire teaches courses in administrative law and regulation," all "area[s] in which" Spaeth claims to be "an expert."  (*Id.* ¶¶ 167, 176, 185.)  Finally, Spaeth alleges that "[i]f Georgetown had considered [his] application based on his qualifications alone and not based on his age, it would have granted him an interview at the AALS Faculty Recruitment Conference" (*id.* ¶ 193) and "hired him" because "he is significantly more qualified for a teaching position than all of the individuals Georgetown hired."  (*Id.* ¶ 194.)

Having filed a Charge of Discrimination against Georgetown with the Equal Employment Opportunity Commission, and having received a Notice of Right to Sue (*id.* ¶¶ 4–5), Spaeth brought suit, alleging that Georgetown violated the ADEA and the DCHRA by not hiring him. He seeks an injunction "ordering [Georgetown] to offer [him] a tenure-track teaching position," along with declaratory, compensatory, and exemplary relief, and fees, costs, and pre- and post-judgment interest.  (*Id.* at 51–52.)

Georgetown has moved to dismiss, arguing pursuant to Federal Rule of Civil Procedure 12(b)(6) that Spaeth has failed to state a claim for age discrimination because "he did not identify

[on his FAR Form] any subject which [Georgetown] hired any other applicant to teach" and

because, "for the subjects which [he] complains [Georgetown] hired others to teach, [his] FAR

form reported no published work." (Def.'s Mot. at 3.) Georgetown also argues that plaintiffs

may not seek compensatory and exemplary relief under the ADEA and that Spaeth's prayers for

such must be dismissed. (*See id.* at 17–18.)

## ANALYSIS

### I.     FAILURE TO STATE A CLAIM

This Court has federal question jurisdiction over Spaeth's ADEA claim under 28 U.S.C.

§ 1331, and exercises supplemental jurisdiction over Spaeth's DCHRA claim under 28 U.S.C. §

1367(a). "Because [the Court] appl[ies] the same analysis to [Spaeth's] ADEA and DCHRA

claims" with respect to Georgetown's arguments for dismissal, in this Section of its

Memorandum Opinion the Court "refers . . . to his claim under the ADEA only." *Paquin v. Fed.

Nat'l Mortg. Ass'n*, 119 F.3d 23, 27 n.1 (D.C. Cir. 1997); *see, e.g.*, *Schuler v.

PricewaterhouseCoopers, LLP*, 595 F.3d 370, 376 (D.C. Cir. 2010) ("The courts of the District

of Columbia 'look[] to federal court decisions interpreting the [ADEA] when evaluating age

discrimination claims under the DCHRA.'" (alterations in the original) (quoting *Washington

Convention Ctr. Auth. v. Johnson*, 953 A.2d 1064, 1073 n.7 (D.C. 2008))).

In evaluating a motion to dismiss for "failure to state a claim upon which relief can be

granted" under Rule 12(b)(6), the Court is mindful that a complaint need only contain "'a short

and plain statement of the claim showing that the pleader is entitled to relief,'" *Bell Atlantic

Corporation v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)), "in order to

'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id.*

(alteration in the original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The notice

pleading rules are "not meant to impose a great burden on a plaintiff," *Dura Pharmaceuticals, Incorporated v. Broudo*, 544 U.S. 336, 347 (2005) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513–515 (2002)), and "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion.  *Twombly*, 550 U.S. at 555 (citing *Conley*, 355 U.S. at 47).  Nevertheless, a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action," *id.* at 555, and his "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).

This Court need not accept as true any legal conclusions couched as factual allegations or inferences unsupported by facts in Spaeth's Amended Complaint.  *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 193 (D.C. Cir. 2006).  Yet, in determining whether the factual allegations which are entitled to an assumption of truth are "enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, the Court must grant Spaeth "'the benefit of all inferences that can be derived from the facts alleged.'"  *Am. Nat'l Ins. Co. v. F.D.I.C.*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).

As relevant here, the ADEA makes it "unlawful for an employer . . . to fail or refuse to hire . . . or otherwise discriminate against any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1).  In order to prevail on an age discrimination claim for failure to hire under the ADEA, a plaintiff must establish a *prima facie* case by demonstrating that "(1) she is a

7

member of the protected class (*i.e.*, over 40 years of age); (2) she was qualified for the position

for which she applied; (3) she was not hired; and (4) she was disadvantaged in favor of a younger

person." *Teneyck v. Omni Shoreham Hotel*, 365 F.3d 1139, 1155 (D.C. Cir. 2004) (citing *Cuddy

v. Carmen*, 694 F.2d 853, 857 (D.C. Cir. 1982)).  However, "an employment discrimination

plaintiff is not required to plead every fact necessary to establish a *prima facie* case to survive a

motion to dismiss." *Jones v. Air Line Pilots Ass'n, Int'l*, 642 F.3d 1100, 1104 (D.C. Cir. 2011)

(citing *Swierkiewicz*, 534 U.S. at 508); *cf. Fennell v. A.A.R.P.*, 770 F. Supp. 2d 118, 127 (D.D.C.

2011) (In the race discrimination context, "[t]he law of this Circuit is clear: at the motion to

dismiss stage, dismissal is not available on the basis that the plaintiff has failed to plead the

elements of a *prima facie* case of discrimination." (citing *Brady v. Office of Sergeant at Arms*,

520 F.3d 490, 493 (D.C. Cir. 2008))).  "In recognition of the fact that discovery is most likely to

unearth relevant facts and evidence pertaining to discriminatory animus, the *prima facie* case is

an evidentiary standard, not a pleading requirement." *Id.* (citing *Bryant v. Pepco*, 730 F. Supp.

2d 25, 28 (D.D.C. 2010)); *see Swierkiewicz*, 534 U.S. at 512 ("Given that the *prima facie* case

operates as a flexible evidentiary standard, it should not be transposed into a rigid pleading

standard for discrimination cases.").

    Indeed, "courts in this Circuit have consistently recognized the 'ease with which a

plaintiff claiming employment discrimination can survive a . . . motion to dismiss.'" *Fennell*,

770 F. Supp. 2d at 127 (quoting *Rouse v. Berry*, 680 F. Supp. 2d 233, 236 (D.D.C. 2010)).  Yet,

"[w]hile a plaintiff need not plead all the elements of a *prima facie* case, he must nevertheless

plead sufficient facts to show a plausible entitlement to relief." *Id.*; *see Iqbal*, 129 S. Ct. at 1949.

    Spaeth satisfies this standard.  The first paragraph of Spaeth's Amended Complaint

summarizes his age discrimination claim:

> [Spaeth], who was born in 1950, applied for teaching positions with
> [Georgetown] beginning during the 2011–2012 academic year.  Despite [his]
> exemplary qualifications, [Georgetown] did not offer Plaintiff a tenure-track
> teaching position for the 2011–2012 academic year, and . . . did not even offer
> [him] an interview. Instead, [Georgetown] hired individuals decades younger than
> Plaintiff whose qualifications are significantly inferior to Plaintiff's qualifications.

(Am. Compl. ¶ 1.)  Spaeth goes on to allege substantial details to show that "[]he was

qualified for the position for which []he applied," *Teneyck*, 365 F.3d at 1155, and that he

was more qualified than those Georgetown hired.  (*See* Am. Compl.  ¶¶ 36–63 (detailing

Spaeth's qualifications); ¶¶ 166–91 (detailing the qualifications of the individuals

Georgetown hired and comparing them to Spaeth's).)  Courts faced with far less

expansive complaints have denied motions to dismiss ADEA claims.  *See, e.g.*, *Bowe-*

*Connor v. Shinseki*, --- F. Supp. 2d ----, ----, 2012 WL 601025, at *8 (D.D.C. 2012)

(concluding that plaintiff had stated a claim where her complaint alleged only that "she

was called 'one of the 'GOLDEN GIRLS' while the supervisory staff did nothing to

advert the behavior in violation of the [ADEA]'"); *Vaughan v. Acheson*, No. 10-cv-2184,

2011 WL 1515733, at *1–2 (D.D.C. April 20, 2011) (concluding that plaintiff had stated

a claim under the ADEA where his complaint "allege[d] that Amtrak declined to hire

him" for "a position for which he was qualified because of his . . . age").  In any case,

Spaeth's Amended Complaint "contain[s] sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.'"  *Iqbal*, 129 S. Ct. at 1949 (quoting

*Twombly*, 550 U.S. at 570); *see, e.g.*, *Swierkiewicz*, 534 U.S. at 514 (concluding that

plaintiff had stated a claim under the ADEA where he "alleged that he had" suffered an

adverse employment action "on account of his . . . age" and where "[h]is complaint

detailed the events leading to" the adverse employment action "and included the ages . . .

of at least some of the relevant persons involved").  Spaeth's "allegations give

[Georgetown] fair notice of what [his] claims are and the grounds upon which they rest"

and state a claim "upon which relief could be granted under . . . the ADEA." *Id.* at 514.[2]

Georgetown's arguments to the contrary are unpersuasive. First, Georgetown

argues that because it did not ultimately hire anyone to teach any of the courses Spaeth

listed on his FAR Form, Spaeth effectively failed to apply for the positions Georgetown

filled at the 2010 AALS Faculty Recruitment Conference. Georgetown hired individuals

to teach taxation, taxation and tax policy, and administrative law and regulation. (Am.

Compl. ¶¶ 167, 176, 185.) Georgetown protests that, "[o]n his FAR form, [Spaeth] did

not list taxation, tax policy, or administrative law and regulation." (Def.'s Mot. at 5.)

Accordingly, Georgetown argues that a comparison of "the subjects [Spaeth] said he

wanted or was willing to teach with the subjects [it] hired others to teach" shows that

Spaeth "rendered himself unqualified for the positions [Georgetown] filled" and that as a

result, his age discrimination claim fails. (*Id.* at 6.) Specifically, Georgetown claims that

---

[2] Georgetown cites a number of decisions dismissing plaintiffs' ADEA claims (*see* Def.'s Mot. at 11–12, 15–16), but those concerned complaints that were far more speculative, and significantly less detailed and comprehensive, than that at issue here. In *Pezzioli v. Allegheny Ludlum Corp.*, No. 10-cv-0427, 2010 U.S. Dist. LEXIS 72734 (W.D. Pa. July 20, 2010), for example, the plaintiff "fail[ed] to assert that [the defendant] ultimately filled the position with someone sufficiently younger than him that would permit an inference of age discrimination." *Id.* at *4 (internal quotation marks omitted). Spaeth, on the other hand, alleged that Georgetown's hires were "decades younger" than he is. (Am. Compl. ¶ 166.) In *McKeithan v. Boarman*, 803 F. Supp. 2d 63 (D.D.C. 2011), the plaintiff "offer[ed] nothing to support a claim that any of [defendant's] conduct was linked to [plaintiff's] age," *id.* at 70, whereas Spaeth alleged, *inter alia*, that "at a workshop hosted by AALS at the 2011 Faculty Recruitment Conference entitled 'Teaching After an Established Career,' a speaker designated by the AALS stated that many law schools are biased against older applicants in the law school hiring process." (Am. Compl. ¶ 30.) And while complaints may be properly dismissed where plaintiffs' claims are "a formulaic recitation of the elements of a [] discrimination claim," *Middlebrooks v. Godwin Corporation*, 722 F. Supp. 2d 82, 88 (D.D.C. 2010) (internal quotation marks omitted), or where they merely state "legal conclusions," *Mekuria v. Bank of America*, No. 10-cv-1325, 2011 U.S. Dist. LEXIS 108649, at *11 (D.D.C. Sept. 23, 2011), Spaeth's detailed factual allegations amount to much more.

"[n]othing learned in discovery" will "alter the fact that [Spaeth] advised [Georgetown] that he was unwilling to teach any of the courses which [Georgetown] subsequently hired others to teach, or that [Georgetown] did not hire anyone else to teach any of the courses which [Spaeth] stated he wanted or was willing to teach."  (Def.'s Reply at 7.)

Spaeth, however, is entitled to challenge Georgetown's factual premise that he did not apply.  Moreover, even if Georgetown's assertions regarding discovery are accurate, it still remains plausible that Georgetown could be liable for age discrimination.  Neither party represents that Georgetown approached the Faculty Recruitment Conference looking only to hire candidates to teach certain subjects.  Furthermore, Spaeth alleges that Georgetown was "interested in talented backgrounds and [would] hire individuals outside their expressed area of interest to teach other subjects."  (Am. Compl. ¶ 25.)  Therefore, Spaeth may succeed on his age discrimination claim even though his FAR Form did not express an interest in teaching the subjects taught by Georgetown's hires if he can show, for instance, that Georgetown would have hired him to teach the subjects he specified, or to teach other subjects, but-for his age.  *See Gross v. FBL Fin. Servs., Inc.*, 129 S. Ct. 2343, 2351 (2009) (concluding that the ADEA requires a plaintiff to "prove by a preponderance of the evidence . . . that age was the 'but-for' cause of the challenged employer decision").  A comparison of Spaeth's course preferences with the specialties of Georgetown's hires may be evidence relevant to Georgetown's liability, but it is not dispositive at this stage of the litigation.  Rule 12(b)(6)'s "plausibility standard is not akin to a 'probability requirement.'"  *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556).  Because Spaeth's Amended Complaint pleads facts that provide for far "more than a sheer possibility that [Georgetown] has acted unlawfully," *id.*, it is sufficient to

11

"nudge[] [his] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Georgetown's second argument is even less persuasive in the Rule 12(b)(6) context. Georgetown claims that published writings are a necessary "qualification for individuals wishing to pursue an academic career in law that is well-known and presumably important to law schools." (Def.'s Mot. at 6.) Because Spaeth's FAR Form listed only a "*Handbook of American Indian Law*" under "Major Published Writings" (*id.*, Ex. 1), Georgetown suggests that this Court can determine, on the basis of Spaeth's Amended Complaint and the materials incorporated therein, that he was not qualified for a professorship. However, Georgetown admits its own mistake: "It goes without saying that on a motion to dismiss, the Court does not compare the quality or quantity of plaintiff's publications with those of other applicants." (*Id.* at 14; *see also* Def.'s Reply at 3 n.2 ("a factual discussion of relative qualifications is not appropriate in a motion to dismiss").) On the pleadings, it is premature to consider whether Spaeth has "failed *to show* that he was qualified for the positions he alleges [Georgetown] filled unlawfully with other applicants." (Def.'s Mot. at 16 (emphasis added).) At this stage, it is enough that Spaeth has set forth allegations, with appropriate specificity and substantiation, that he was qualified for a tenure-track teaching job. On "a motion to dismiss for failure to state a claim, the question [is] not whether [Spaeth] will ultimately prevail on his . . . claim, . . . but whether his [Amended C]omplaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 131 S. Ct. 1289, 1296 (2011) (internal quotation marks and citations omitted) (citing *Swierkiewicz*, 534 U.S. at 514). The Court concludes that it is.

Because Spaeth's Amended Complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570), this Court will deny Georgetown's motion to dismiss Spaeth's age discrimination claim.

## II.   AVAILABILITY OF COMPENSATORY AND PUNITIVE DAMAGES UNDER THE ADEA

Georgetown also argues that compensatory and punitive damages are not available under the ADEA, and that Spaeth's prayers for "[o]ther compensatory damages" and "[e]xemplary damages" (Am. Compl. at 52) must therefore be dismissed from his Amended Complaint.  The Court agrees.  "'[T]he text of the ADEA explicitly provides for back pay, unpaid overtime compensation, and liquidated damages but not compensatory and punitive damages.'"  *Lindsey v. Dist. of Columbia*, 810 F. Supp. 2d 189, 201 (D.D.C. 2011) (citing 29 U.S.C. § 626(b); quoting *Vanegas v. P & R Enters., Inc.*, No. 02-cv-478, 2002 WL 31520357, at *2 (D.D.C. Oct. 9, 2002)).  Indeed, "[t]he overwhelming weight of legal authority indicates that compensatory and punitive damages are not available under the ADEA."  *Prouty v. Nat'l R.R. Passenger Corp.*, 572 F. Supp. 200, 208 (D.D.C. 1983) (collecting cases); *accord Comm'r v. Schleier*, 515 U.S. 323, 326 & n.2 (1995) ("[T]he Courts of Appeals have unanimously held . . . that the ADEA does not permit a separate recovery of compensatory damages for pain and suffering or emotional distress." (collecting cases)); *Carter v. Marshall*, 457 F. Supp. 38, 42 (D.D.C. 1978) (holding that compensatory and punitive damages are not available under the ADEA).[3]

---

[3] Georgetown seeks to dismiss Spaeth's prayers for compensatory and punitive damages under the federal ADEA only, and does not argue that compensatory and punitive damages are unavailable under the DCHRA.  Accordingly, the Court's analysis in this Section of its Memorandum Opinion is limited to Spaeth's claims under the ADEA, and does not address his claims under the DCHRA.  As to the latter provision, "punitive damages are available in *all* discrimination cases under the DCHRA, 'subject only to the general principles governing any award of punitive damages.'"  *Daka, Inc. v. Breiner*, 711 A.2d 86, 98 (D.C. 1998) (emphasis in

In opposition, Spaeth argues only that courts considering Rule 12(b)(6) motions should not "address the scope of the prayer of relief in the complaint." (Pl.'s Opp'n at 26.) Tellingly, Spaeth does not address the merits of Georgetown's contention, nor does he attempt to distinguish decisions granting motions to dismiss plaintiffs' claims for compensatory and exemplary damages under the ADEA. He has advanced no argument why, if the relief he requests is unavailable under the statute, his prayer for such relief should not be stricken. Therefore, because "exemplary . . . and compensatory damages are not recoverable under the ADEA," Spaeth's claims for them "will be dismissed." *Carter*, 457 F. Supp. at 42; *see, e.g.*, *Vanegas*, 2002 WL 31520357, at *3 (dismissing ADEA plaintiff's claims for compensatory and punitive damages); *Prouty*, 572 F. Supp. at 209 (same).

## CONCLUSION

The Court concludes that Spaeth's Amended Complaint is more than sufficient to survive Georgetown's motion to dismiss for failure to state a claim for age discrimination. The Court will grant Georgetown's motion, however, to the extent it seeks to dismiss Spaeth's claims for compensatory and exemplary damages under the ADEA. A separate order accompanies this Memorandum Opinion.

_____/s/_____
ELLEN SEGAL HUVELLE
United States District Judge

Date:   March 13, 2011

---

the original) (quoting *Arthur Young & Co. v. Sutherland*, 631 A.2d 354, 372 (1993)). Compensatory damages are also available under the DCHRA. *See, e.g.*, *United Mine Workers of Am. v. Moore*, 717 A.2d 332, 339 (D.C. 1998) (The Court of Appeals's "review of an award of compensatory damages is 'limited and highly deferential' because the trial court has 'broad discretion' to determine appropriate relief under the DCHRA." (quoting *Daka*, 711 A.2d at 100)).